IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

Clerk, U.S. District Court
Southern District of Texas
FILED

MAY - 2 1995

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| MARY DAVIDSON, NANCY ELLIS, JODIE GIBBANY, STEVEN GLOSSNER, SHANNON L. HENDERSON, JOSIE HOKANSON, LERONDA LUSK, LOIS MICHALSKY, BECKY PARMLEY, SHERRY THOMPSON, and PAMELA WOODLEY, | § | |
| Plaintiffs, | § | CIVIL ACTION NO. H 95-1353 |
| VS. | § | JURY REQUESTED |
| GUARDIAN PLANS, INC.; SERVICE CORPORATION INTERNATIONAL; PREMARCO, INC.; KENNETH GRIFFIN; DAVID WILLIS; and GARRISON WYNN, | § | |
| Defendants. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

## I.
## PRELIMINARY STATEMENT

1.01 Plaintiffs Mary Davidson, Nancy Ellis, Jodie Gibbany, Steven Glossner, Shannon L. Henderson, Josie Hokanson, Leronda Lusk, Lois Michalksy, Becky Parmley, Sherry Thompson, and Pamela Woodley bring this action against Defendants Guardian Plan, Inc.; Service Corporation International; Premarco, Inc.; Kenneth Griffin; David Willis; and Garrison Wynn for equitable and legal redress, including reinstatement and appropriate injunctive relief, and actual, compensatory, and punitive damages for violation of the Civil Rights Act of 1870, codified as 42 U.S.C. § 1981, the

ClibPDF - www.fastio.com

Civil Rights Act of 1991, codified as 42 U.S.C. § 1981a, and the Civil Rights Act of 1964, codified as 42 U.S.C. § 2000e, et seq., as amended. In particular, your Plaintiffs state that they are all Caucasian and will show that they were employees and subordinates of Defendants, that they were involuntarily forced to discriminate against African-Americans in employment and services offered to the general public, and that when they complained about the way they were forced to discriminate against African-Americans, they were summarily discharged from employment.

1.02 In addition, your Plaintiffs bring this action to recover actual, compensatory, and punitive damages against the Defendants, for wrongful termination of employment under the common law of the State of Texas.

1.03 In addition, this action is brought to vindicate the civil rights of unidentified African Americans who were denied employment and services by the Defendants.

## II.
## JURISDICTION AND VENUE

2.01 This Court has jurisdiction over the subject matter and parties to this action, pursuant to the provisions of 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e(f)(1) and (3), and pursuant to the doctrine of pendent jurisdiction.

2.02 Venue is proper in this Court, pursuant to the provisions of 28 U.S.C. § 1391 and 42 U.S.C. § 2000e(f)(1), because the cause of action arose in and the parties are residents of Houston,



ClibPDF - www.fastio.com

Harris County, Texas.

## III.
## IDENTITY OF PARTIES

A. Identity of Plaintiffs:

3.01 Plaintiff Mary Davidson resides at 1800 State Street, Granite City, Illinois 62040. At all times material and relevant to this cause of action she was employed as a telemarketer in the Corporate Office of Defendant Service Corporation International.

3.02 Plaintiff Nancy Ellis resides at 19730 San Gabriel, Houston, Texas 77080. At all times material and relevant to this cause of action she was employed as a telemarketer in the Corporate Office of Defendant Service Corporation International.

3.03 Plaintiff Jodie Gibbany (Crawford) resides at Post Office Box 928, Kirbyville, Texas 75996. At all times material and relevant to this cause of action she was employed as a telemarketer in the Corporate Office of Defendant Service Corporation International.

3.04 Plaintiff Steven Glossner resides at 11500 Kegans Ridge, Houston, Texas 77031. At all times material and relevant to this cause of action he was employed as a telemarketer in the Corporate Office of Defendant Service Corporation International.

3.05 Plaintiff Shannon L. Henderson resides at 117 East Nazro Street, Baytown, Texas 77520. At all times material and relevant to this cause of action she was employed as a telemarketer in the Corporate Office of Defendant Service Corporation



ClibPDF - www.fastio.com

International.

3.06 Plaintiff Josie Hokanson resides at 1323 Witte Road, Apartment 372, Houston, Texas 77055. At all times material and relevant to this cause of action she was employed as a telemarketer in the Corporate Office of Defendant Service Corporation International.

3.07 Plaintiff Leronda Lusk resides at 117 East Nazro Street, Baytown, Texas 77520. At all times material and relevant to this cause of action she was employed as a telemarketer in the Corporate Office of Defendant Service Corporation International.

3.08 Plaintiff Lois Michalsky resides at 706 Dunwick Street, Pasadena, Texas 77508. At all times material and relevant to this cause of action she was employed as a telemarketer in the Corporate Office of Defendant Service Corporation International.

3.09 Plaintiff Becky Parmley resides at 324 Greenbriar Street, Baytown, Texas 77250. At all times material and relevant to this cause of action she was employed as a telemarketer in the Corporate Office of Defendant Service Corporation International.

3.10 Plaintiff Sherry Thompson resides at 6918 Caddo Lake Lane, Houston, Texas 77083. At all times material and relevant to this cause of action she was employed as the Administrator of Special Services in the Corporate Office of Defendant Service Corporation International.

3.11 Plaintiff Pamela Woodley resides at 5439 Windsor Forest, Houston, Texas 77088. At all times material and relevant



ClibPDF - www.fastio.com

to this cause of action she was employed as a telemarketer in the Corporate Office of Defendant Service Corporation International.

B. Identity of Defendants:

3.12 Defendant Guardian Plans, Inc. is or was a domestic corporation and it is or was engaged in the business of providing pre-planned last burial rites and services for deceased persons and their family and friends. At all times material and relevant to this cause of action, it was a wholly owned subsidiary of Defendant Service Corporation International, and was primarily responsible for the employment of telemarketers in the Corporate Office of Defendant Service Corporation International. According to the Office of the Secretary of State, it has changed its name to SCI Texas Funeral Services, Inc. It can be served with a copy of this Complaint and the Summons by serving its registered agent for service, Mr. James M. Shelger, at 1929 Allen Parkway, Houston, Texas 77019.

3.13. Defendant Service Corporation International (hereinafter referred to by its tradename, "SCI") is a domestic corporation engaged in the business of providing pre-planned last burial rites and services for deceased persons and their family and friends. At all times material and relevant to this cause of action, it was the parent organization responsible for the actions of its wholly owned subsidiary Defendant Guardian Plans, Inc. It can be served with a copy of this Complaint and the Summons by



ClibPDF - www.fastio.com

serving its registered agent for service, Mr. James M. Shelger, at Post Office Box 13548, 1929 Allen Parkway, Houston, Texas 77019.

3.14 Defendant Premarco, Inc. is a domestic corporation which may have purchased and assumed the pre-burial plans marketed by Defendants Guardian Plans, Inc. and SCI. It can be served with a copy of this Complaint and the Summons by serving its registered agent for service, Mr. Donald R. Campbell, at 323 Tamerlaine, Houston, Texas 77124.

3.15 Defendant Kenneth Griffin is a resident of Houston, Harris County, Texas. At all times material and relevant to this cause of action, he is or was the Assistant Vice President of Marketing for SCI and is or was a manager of the telemarketers in the SCI Corporate Office. He can be served with a copy of this Complaint and the Summons at his office address, at 1929 Allen Parkway, Houston, Texas 77019.

3.16 Defendant David Willis is a resident of Houston, Harris County, Texas. At all times material and relevant to this cause of action, he is or was the Vice President of Marketing for SCI and is or was a manager of the telemarketers in the SCI Corporate Office. He can be served with with a copy of this Complaint and the Summons at his office address, at 1929 Allen Parkway, Houston, Texas 77019.

3.17 Defendant Garrison Wynn is a resident of Houston, Harris County, Texas. At all times material and relevant to this cause of action, he is or was a Manager for SCI and is or was re-



ClibPDF - www.fastio.com

sponsible for the telemarketers in the SCI Corporate Office. He can be served with a copy of this Complaint and the Summons at his office address, at 1929 Allen Parkway, Houston, Texas 77019.

## IV.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.01 All of your Plaintiffs filed an employment discrimination complaint with the Equal Employment Opportunity Commission.

4.02 To Plaintiffs' knowledge all of their complaints were investigated by the Equal Employment Opportunity Commission.

4.03 On or about February 2, 1995, Plaintiffs received the statutory Notice of Right to Sue from the Equal Employment Opportunity Commission.

4.04 Plaintiffs have filed their Complaint within 90 days of receipt of the statutory Notice of Right to Sue.

## V.
## BACKGROUND FACTS

5.01 All of your Plaintiffs are Caucasian. Except for Plaintiff Sherry Thompson, all of your Plaintiffs were employed by SCI as telemarketers in SCI's Corporate Office in Houston, Texas. Plaintiff Sherry Thompson was their supervisor and held the title, Administrator of Special Services.

5.02 As telemarketers, your Plaintiffs marketed SCI's prearranged funeral plans by telephoning prospective clients across the country. Each telemarketer was given a market zone within



ClibPDF - www.fastio.com

which to call and sell the pre-arranged funeral plan, called the Guardian Plan.

5.03 Each telemarketer was instructed not to sell the Guardian Plan to an African American. Certain zip codes were stricken from their zone, because that area was heavily populated by African Americans. Moreover, they were instructed to screen all telephone calls to screen out any African American by closely listening for any accent that would be endemic to African Americans and by asking questions, requiring the listener to use in their answer such words as, "four" or "door" or "children", and inquire whether the listener or anyone in his family had ever used a Black funeral home, as an aide to determine whether the listener was African American.

5.04 If the telemarketer detected that the listener was African American, by the person's accent, pronounciation of certain words, or by previous use of a Black funeral home, the telemarketer was instructed to abort the telephone conversation.

5.05 After the telemarketer screens the call, to make sure the person at the other end is not African American, then the telemarketer solicits the sale of the Guardian Plan. If the listener states that he or she is interested, then the telemarketer fills out a prospect sales slip and transmits the prospect sales slip to a salesman in the listener's area. The prospect sales slip contains the person's name and address, the date of the call, and the name of the telemarketer.



ClibPDF - www.fastio.com

5.06 If the salesman is successful in consummating a sale of the Guardian Plan, then the telemarketer receives a commission for the sale. If the sale is not consummated, then the telemarketer does not receive any compensation, even though the telemarketer found a prospective customer.

5.07 Sometimes the telemarketer is unsuccessful in screening the telephone conversation and unwittingly and inadvertently transmits a propect sale slip for a prospective customer who is African American. When that happens, the salesman who contacts that prospective customer, returns the prospect sales slip to the telemarketer, and inscribes on the prospect sales slip the letter, "Z", the code for an African American. Sometimes, the saleman would be more explicit, and write on the prospect sales slip the notation, "NE/BLK", meaning, Not eligible, Black.

5.08 In fact, so many prospect sales slips were being returned for that reason, that both Plaintiffs and Defendants Wilis, Griffin and Wynn became very upset. Defendants Wilis, Griffin and Wynn threatened to close the office if the telemarketers did not do a better job of screening out African Americans.

5.09 Your Plaintiffs became very upset that because of the screening, their range of prospective customers were restricted and they suffered substantial loss of income because they could not sell to a significant segment of the population in their geographic zone.

5.10 When, as a group, your Plaintiffs complained to Defen-



ClibPDF - www.fastio.com

dants Wilis, Griffin and Wynn, concerning their loss of income resulting from the discrimination against African Americans, Defendants terminated all of the Plaintiff telemarketers, closed the Houston office, and moved the telemarketing operation to Katy, Texas.

5.11 The only two African American telemarketers working in the Corporate Houston Office were forced to resign and Plaintiff Sherry Thompson was instructed by Defendants Willis, Griffin and Wynn not to employ any more African Americans, because they did not want their clients, Caucasian funeral directors, to see an African American in the Corporate Office, selling Guardian Plans. Plaintiff Thompson was told that the Caucasian funeral directors did not want to funeralize deceased African Americans, because their funeral services are different and because their bodies stink after embalming.

5.12 Applicants for a telemarketing position were screened the same way prospective customers were screened. The application was taken by telephone and if Defendants Wilis, Griffin or Wynn detected an African American accent, no response would be made to the telephone application. On at least one occasion, a telephone applicant who was African American slipped through the screen and was given an interview. When she came in for an interview, Defendant Griffin instructed Plaintiff Thompson to get rid of her.

5.13 Defendants Wilis, Griffin and Wynn informed Plaintiff Thompson that the owners instructed them not to sell the Guardian



ClibPDF - www.fastio.com

Plan to African Americans and not to employ African American telemarketers in the Houston Corporate Office.

5.14 When Plaintiff Thompson informed Defendants Willis, Griffin and Wynn that she objected to the way they discriminated against African Americans, by refusing them services and employment, she was terminated.

## VI.
## VIOLATION OF THE 1870 CIVIL RIGHTS ACT

6.01 Plaintiffs incorporate under this heading, Paragraphs 5.01, through 5.14, as if fully copied under this heading, and based on those facts, respectfully submit that Defendants violated the provisions of the 1870 Civil Rights Act, codified as 42 U.S.C. § 1981.

6.02 The 1870 Civil Rights Act, as amended, prohibits racial discrimination in these words:

**§ 1981. Equal rights under the law**

**(a) Statement of equal rights**

> All persons within the jurisdiction of the United States shall have the same right in every State and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to the punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

**(b) "Make and enforce contracts" defined**

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and condi-





ClibPDF - www.fastio.com

tions of the contractual relationship.

. . .

[42 U.S.C. § 1981]

6.03 In this case, Plaintiffs, who are Caucasian, were prohibited by their Caucasian superiors and employer from contracting with African Americans. Therefore, Plaintiffs bring this action to recover damages for that class of African Americans who were denied the right to contract with Defendants.

6.04 Moreover, since Plaintiffs would have benefitted from the contracts with African Americans, as third-party beneficiaries, Plaintiffs bring this action against their superiors and employer to collect actual and compensatory damages for violation of the 1870 Civil Rights Act.

## VII.
## VIOLATION OF THE 1991 CIVIL RIGHTS ACT

7.01 Plaintiffs incorporate under this heading, Paragraphs 5.01, through 5.14, as if fully copied under this heading, and based on those facts, respectfully submit that Defendants violated the provisions of the 1991 Civil Rights Act, codified as 42 U.S.C. § 1981a.

7.02 Under 42 U.S.C. § 1981a, Plaintiffs are entitled to recover compensatory and punitive damages against the Defendants if the discrimination was intentional and they are not entitled to recover damages against Defendants under the provisions of the 1870 Civil Rights Act. The 1991 Civil Rights Act reads, pro tan-





ClibPDF - www.fastio.com

to, that:

**§ 1981a. Damages in cases of intentional discrimination in employment**

**(a) Right of recovery**

**(1) Civil rights**

In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5) [42 U.S.C.A. §§ 2000e-5 or 2000e-16] against a respondent who engaged in unlawful intentional discrimination (not an employmnent practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e-2 or 2000e-3) [42 U.S.C.A §§ 2000e-3, or 2000e-16], and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e-5(g)] from the respondent.

[42 U.S.C. § 1981a]

7.03 As Plaintiffs illustrated under Paragraphs 5.01, through 5.14, of this Complaint, Defendants' unlawfui discrimination against African Americans was very intentional. Since your Plaintiffs suffered economic loss and loss of employment, because of Defendants' intentional unlawful discrimination, Plaintiffs are entitled to recover actual and compensatory damages against Defendants, even if, for some reason, they are not allowed to recover damages against Defendants under the 1870 Civil Rights Act.

7.04 Therefore, Plaintiffs respectfully request compensatory and punitive damages against Defendants for violation of either



ClibPDF - www.fastio.com

the 1870 or the 1991 Civil Rights Act.

## VIII.
## VIOLATION OF THE 1964 CIVIL RIGHTS ACT

8.01 Plaintiffs incorporate under this heading, Paragraphs 5.01, through 5.14, as if fully copied under this heading, and based on those facts, respectfully submit that Defendants violated the provisions of Title VII of the 1964 Civil Rights Act, codified as 42 U.S.C. § 2000e, et seq., as amended.

8.02 This is a disparate treatment, not a disparate impact case. The Plaintiffs, all Caucasian, worked as telemarketers in Defendants' Houston Corporate Office. As telemarketers, Plaintiffs were responsible for marketing pre-arranged funeral plans by telephone and for setting up appointments for salesmen or saleswomen to meet with potential customers.

8.03 Defendant SCI owned Defendant Guardian Plans, Inc. Guardian Plans, Inc. may have sold the Guardian Plan to Defendant Premarco, Inc. Premarco, Inc. may have re-conveyed the Guardian Plan to Defendant SCI. Regardless of the corporate entity, SCI and/or Guardian Plans, Inc. and Permaco, Inc. are liable to Plaintiffs.

8.04 Moreover, Defendants Willis, Griffin, and Wynn, as officers of Defendant SCI orchestrated the discrimination policy by prohibiting Plaintiffs from setting up appointments with or selling to African Americans. That practice directly and indirectly adversely affected Plaintiffs' income, since they derived their



ClibPDF - www.fastio.com

income from direct sales to customers, in the form of commissions.

8.05 Moreover, Defendants SCI, Guardian Plans, Inc. Premarco, Inc., Willis, Griffin, and Wynn retaliated against Plaintiffs for opposing the racial discriminatory procedure and were terminated as a result thereof.

8.06 Defendants' discriminatory policy against African Americans and their retaliation against Plaintiffs violate the provisions of § 703(a) of Title VII of the 1964 Civil Rights Act.

8.07 Under the provisions of § 703(a) of Title VII of the 1964 Civil Rights Act, as amended, Plaintiffs are entitled to compensatory and punitive damages.

## IX.
## WRONGFUL TERMINATION

9.01 Plaintiffs incorporate under this heading, Paragraphs 5.01, through 5.14, as if fully copied under this heading, and based on those facts, respectfully submit that Defendants wrongfully terminated Plaintiffs under the common law of the State of Texas.

9.02 Defendants forced Plaintiffs to violate federal and state law law by discriminating against African Americans, in terms of service and employment.

9.03 When Plaintiffs refused to continue to violate state and federal law, Defendants terminated the employment of Plaintiffs.

9.04 Plaintiffs bring this action under state law to recover actual, compensatory, and punitive damages for wrongful discharge



ClibPDF - www.fastio.com

of employment.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that Defendants be summoned to appear herein, that after trial, the Court will award Plaintiffs reinstatement, injunctive relief, and actual, compensatory, and punitive damages, reasonable attorney's fees, court costs and expert fees, prejudgment and postjudgment interest at the highest possible legal rate, to Plaintiffs and to the unidentified prospective African American customers and employees, who were denied services and employment, and for such other and further relief the Court deems just and proper under the circumstances.

Respectfully submitted,

JEFFERSON & MIMS

By: Carnegie H. Mims, Jr.

Carnegie H. Mims, Jr.
707 Central Square Building
2100 Travis Street
Houston, Texas 77002
713/654-9009; 650-0124
State Bar No. 14175000

Attorneys for Plaintiffs





ClibPDF - www.fastio.com